Slip Op. 21-65

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S.,**<br><br>              **Plaintiff,**<br><br>**HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.,**<br><br>              **Consolidated-Plaintiff,**<br><br>       **v.**<br><br> **THE UNITED STATES,**<br><br>              **Defendant,**<br><br>       **and**<br><br>**NUCOR CORPORATION, CHARTER STEEL and KEYSTONE CONSOLIDATED INDUSTRIES, INC.,**<br><br>              **Defendant-Intervenors.** | **Before: Gary S. Katzmann, Judge**<br>**Consol. Court No. 18-00143** |

## OPINION

[The court affirms Commerce's Second Remand Results.]

Dated: Dated: May 20, 2021

Matthew M. Nolan and Leah N. Scarpelli, Arent Fox LLP, of Washington, DC, for plaintiff.

David L. Simon, Law Office of David L. Simon, of Washington, DC, for consolidated-plaintiff.

Kara M. Westercamp, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant *United States*. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, L. Misha Preheim, Assistant Director. Of counsel on the brief was Nikki Kalbing, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Maureen E. Thorson, Derick G. Holt, and Jeffrey O. Frank, Wiley Rein LLP, of Washington, DC, for defendant-intervenor *Nucor Corporation*.

R. Alan Luberda, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenors *Charter Steel and Keystone Consolidated Industries, Inc*.

Katzmann, Judge:  The court again returns to an antidumping ("AD") investigation by the United States Department of Commerce ("Commerce") on imports of carbon and alloy steel wire rod ("wire rod") imported into the United States from Turkey.  Before the court is Commerce's Final Results of Redetermination Pursuant to Second Court Remand (Dep't Commerce Dec. 14, 2020), ECF No. 67 ("Second Remand Results"), which the court ordered in Icdas Celik Enerji Tersane Ve Ulasim Sanayi, A.S., v. United States, 44 CIT __, 475 F. Supp. 3d 1293 (2020) ("Icdas II"), so that Commerce could recalculate its duty drawback adjustment in accordance with the court's instructions.  Plaintiff Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. ("Icdas") and Consolidated-Plaintiff Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. ("Habaş") (collectively, "Plaintiffs") do not challenge the Second Remand Results.  Pl. Icdas's Cmts. on Second Remand Redetermination at 2–3, Jan. 13, 2021, ECF No. 70 ("Pl.'s Br."); Cmts. of Consol.-Pl. Habaş in Opp'n to Nucor Corp.'s Cmts. on Final Results of Second Redetermination at 2, Feb. 12, 2021, ECF No. 73 ("Consol.-Pl.'s Br.").   Defendant the United States ("Government") requests that the court affirm Commerce's Second Remand Results.  Def.'s Resp. to Cmts. on the Second Remand Redetermination at 2, Feb. 12, 2021, ECF No. 74 ("Def.'s Br.").  Defendant-Intervenor Nucor Corporation ("Nucor") opposes the Second Remand Results and challenges Commerce's selected methodology.  Nucor Corp.'s Cmts. on Final Results of Second Redetermination, Jan. 13, 2021, ECF No. 69 ("Def.-Inter.'s Br.").  The court affirms Commerce's duty drawback methodology and enters judgment for the Government.

## BACKGROUND

The court set out the relevant legal and factual background of the proceedings in further detail in its previous opinions, Icdas Celik Enerji Tersane Ve Ulasim Sanayi, A.S., v. United States, 44 CIT __, 429 F. Supp. 3d 1353, 1357–60 (2020) ("Icdas I"), and Icdas II, 475 F. Supp. 3d at 1296–1300.  Information relevant to the instant opinion is set forth below.

On March 28, 2017, Commerce initiated an AD investigation into wire rod from Turkey based on petitions from domestic producers alleging that imports of wire rod were being entered into the United States to the detriment of the domestic industry.  See Carbon and Alloy Steel Wire Rod From Belarus, Italy, the Republic of Korea, the Russian Federation, South Africa, Spain, the Republic of Turkey, Ukraine, United Arab Emirates, and United Kingdom: Initiation of Less-Than-Fair-Value Investigations, 82 Fed. Reg. 19,207, 19,207 (Dep't Commerce Apr. 26, 2017), P.R. 8.  After the requisite investigation, Commerce agreed with petitioners and calculated AD margins for Icdas and Habaş of 7.94 percent and 4.93 percent, respectively, and an "All Others" rate of 6.34 percent.  See Carbon and Alloy Steel Wire Rod from Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018), P.R. 1289; Carbon and Alloy Steel Wire Rod from Turkey: Final Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 83 Fed. Reg. 13,249, 13,250 (Dep't Commerce Mar. 28, 2018), P.R. 1285.  In its investigation, Commerce determined that Icdas and Habaş satisfied the criteria of 19 U.S.C. § 1677a(c)(1)(B) and qualified for a duty drawback adjustment[1] on rebates of duties paid on goods that were

---

[1] A duty drawback adjustment "involves duties paid or owed on imports (e.g., raw materials) to the home-market county that produces the goods for export to the United States (the country of exportation)."  Uttam Galva Steels Ltd. v. United States, No. 2020-1461, 2021 WL 1940244, at *1 ( ( Fed. Cir. May 14, 2021) (citing Saha Thai Steel Pipe (Pub.) Co. v. United States, 635 F. 3d 1335, 1340–41 (Fed. Cir. 2011) ("Saha Thai")).  As the seminal duty drawback decision, Saha

subsequently exported, pursuant to Turkey's Inward Processing Regime.  <u>See</u> Mem. from J. Maeder to G. Taverman, re: Decision Mem. for the Prelim. Determination and Negative Determination of Critical Circumstances at 10 (Dep't Commerce Oct. 24, 2017), P.R. 951.  In calculating the duty drawback adjustment, Commerce employed a "duty neutral" methodology, which allocated duty drawback over "all production for the relevant period . . . ." <u>Id.</u> at 11; Mem. from J. Maeder to G. Taverman, re: Issues and Decision Mem. for the Final Affirmative Determination and Negative Determination of Critical Circumstances at 9 (Dep't Commerce Mar. 19, 2018), P.R. 1273.

Plaintiffs challenged Commerce's duty neutral methodology before the court.  Icdas's Summons, June 19, 2018, ECF No. 1; Icdas's Compl., July 19, 2018, ECF No. 8; Habaş's Summons, <u>Habaş v. United States</u>, No. 18-145 (CIT filed June 19, 2018), ECF No. 1; Habaş's Compl., <u>Habaş</u>, No. 18-145, ECF No. 6 (CIT filed July 12, 2018); Joint Mot. to Consol. Cases, Sept. 20, 2018, ECF No. 23; Ct. Order Granting Mot., Sept. 26, 2018, ECF No. 26.  The court agreed with Plaintiffs, holding that the duty neutral methodology was contrary to the plain language of 19 U.S.C. § 1677a(c).  <u>Icdas I</u>, 429 F. Supp. 3d at 1360–65.  The court remanded the duty drawback methodology "with instructions to recalculate the duty drawback adjustment . . . ." <u>Id.</u> at 1365.  Upon this first remand order, Commerce added the full amount of exempted duties to export price as directed by the court.  <u>Final Results of Redetermination Pursuant to Court Remand</u> at 12–13 (Dep't Commerce Apr. 27, 2020), ECF No. 55.  However, Commerce made two circumstances of sale adjustments ("COS adjustments") to normal value such that normal value was increased by the same amount as the duty drawback adjustment.  <u>Id.</u> at 15–16.  Commerce

---

Thai was central to the discussion and analysis in <u>Icdas I</u>, 429 F. Supp. 3d at 1361–62, and <u>Icdas II</u>, 475 F. Supp. 3d at 1298, 1303–04.

calculated new dumping margins of 8.72 percent and 3.22 percent for Icdas and Habaş, respectively, and an All Others rate of 4.78 percent.  Id. at 44.  The court again rejected Commerce's nullification of the duty drawback adjustment through the COS adjustments and remanded to Commerce to recalculate normal value without performing a COS adjustment.  Icdas II, 475 F. Supp. 3d at 1299–1305.

Commerce filed its Second Remand Results with the court on December 14, 2020.  Second Remand Results.  Upon the court's second remand order, Commerce, under protest, "granted [Habaş] and [Icdas] a duty drawback adjustment without making a circumstances of sale adjustment to normal value." Id. at 2.  The altered methodology resulted in Commerce calculating a zero percent AD rate for Habaş and a 4.44 percent dumping margin for Icdas.  Id. at 7–8.  Further, Icdas's rate was also assigned as the All Others rate for other producers and exporters of wire rod from Turkey.  Id.  Plaintiffs, the Government, and Nucor then filed comments and replies regarding the Second Remand Results with the court as directed.  Pl.'s Br.; Consol.-Pl.'s Br.; Def.'s Br.; Def.-Inter.'s Br.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(i).  The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  The court also reviews the determinations pursuant to remand "for compliance with the court's remand order."  See Beijing Tianhai Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015) (citations omitted).

## DISCUSSION

In its previous opinion, the court remanded Commerce's determination for a second time because "Commerce's [first] remand methodology contravenes the plain language of the statute and did not comply with" Icdas I.  Icdas II, 475 F. Supp. 3d at 1298.  The court ordered that "Commerce shall, consistent with this opinion, recalculate normal value without making a circumstance of sale adjustment related to the duty drawback adjustment made to export price (or constructed export price)."  Id. at 1305.  Pursuant to the court's second remand order, Commerce "recalculated each respondent's normal value without making a circumstance of sale adjustment related to the duty drawback adjustment made to U.S. price" and "added, pursuant to . . . Saha Thai Steel Pipe (Pub.) Co. v. United States, 635 F. 3d 1335 (Fed. Cir. 2011) ("Saha Thai"), the amount of the duty exempted divided by the total production quantity to arrive at the annual average per-unit import duty burden to add to the [cost of production]."  Second Remand Results at 3.

Plaintiffs do not contest the methodology used by Commerce in the Second Remand Results, contending that it complies with the statute and caselaw.  See Pl.'s Br. at 2–3; Consol.-Pl.'s Br. at 2.  The Government argues that the Second Remand Results comply with the court's instructions and are supported by substantial evidence and in accordance with law.  Def.'s Br. at 4.  The court concludes that, by recalculating normal value to exclude the COS adjustments related to the duty drawback adjustment to U.S. price, Commerce complied with its remand order in Icdas II and acted in accordance with the statute.[2]  Because the court concludes that the Second Remand Results comply with its remand order, the court sustains them.

---

[2] This methodology has been previously upheld by the court for similar reasons.  See Ereğli Demir ve Celik Fabrikalari T.A.Ş v. United States, 42 CIT __, 308 F. Supp. 3d 1297 (2018); id., 42 CIT __, 357 F. Supp. 3d 1325 (2018); id., 43 CIT __, 415 F. Supp. 3d 1216 (2019); id., 44 CIT __, __, 435 F. Supp. 3d 1378, 1380–81 ("Ereğli IV") (2020), appeals docketed, Nos. 2020-1999; 2020-2003 (Fed. Cir. July 16, 2020); Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi, A.S. v. United

Nucor in its comments on the remand results, as it argued below, claims that Commerce's duty drawback methodology in the Second Remand Results distorts the normal value to export price comparison by disproportionately accounting for duties on the export price. Def.-Inter.'s Br. at 5–6. Nucor instead contends that Commerce should have selected another duty-neutral methodology -- specifically, "adjust[ing] the cost-side drawback methodology approved in Saha Thai to ensure that, consistent with the principles espoused there, per-unit costs are duty-reflective to the same degree as per-unit [export price]." Id. at 7. Nucor's additional arguments largely repeat arguments regarding the duty neutral methodology already addressed by the court in its previous opinions. See Def.-Inter.'s Br. at 5–10; Icdas I, 429 F. Supp. 3d at 1363–65; Icdas II, 475 F. Supp. 3d at 1301–04. In its Second Remand Results, Commerce rejected Nucor's proposed methodology, stating "there is no statutory or regulatory basis for making such a cost-side adjustment." Second Remand Results at 6.

Both the Government and Habaş argue against Nucor's proposed methodology. First, the Government responds that "Nucor cites no authority [that] would permit Commerce to artificially allocate the exempted duty only to those home market sales used for dumping matches or artificially increase the actual drawn back duty burden on each home market sale to equal that included in the United States price." Def.'s Br. at 7. The Government also noted that "Commerce explained[] to make such an adjustment would undermine the purpose of the cost of production provisions to ensure that sales are not made below the cost of production." Id. at 7 (citing Second

_____

States, 43 CIT __, 361 F. Supp. 3d 1314 (2019); id., 43 CIT __, 415 F. Supp. 3d 1195 (2019), id., 44 CIT __, __, 439 F. Supp. 3d 1342, 1349–50 (2020) ("Habaş III"); id., 44 CIT __, 470 F. Supp. 3d 1363 (2020), appeals docketed, Nos. 2021-1066 (Fed. Cir. Oct. 19, 2020); 2021-1209 (Fed. Cir. Nov. 12, 2020); Toscçelik Profil ve Sac Endüstrisi A.S. v. United States, 42 CIT __, 321 F. Supp. 3d 1270 (2018); id., 43 CIT __, 375 F. Supp. 3d 1312 (2019); id., 43 CIT __, 415 F. Supp. 3d 1395 (2019), id., 44 CIT __, __, 457 F. Supp. 3d 1382, 1383 ("Toscçelik IV") (2020). Various appeals from these decisions are pending at the Federal Circuit. See id.

Remand Results at 6–8). Habaş contends that, like the COS adjustment methodology rejected by the court in Icdas II, Nucor's proposed methodology over-allocates exempted duties to normal value. Consol.-Pl.'s Br. at 5.

The court finds Nucor's challenge to the Second Remand Results unavailing. While Nucor argues that the Federal Circuit's decision in Saha Thai allows such a methodology, Def.-Inter.'s Br. at 7, Nucor has not identified any basis that would require Commerce to employ such a methodology. Rather, the Federal Circuit in Saha Thai stated that the statute is "ambiguous as to whether 'costs' may include 'implied' costs in addition to 'actual costs'" and, thus, deferred to Commerce's permissible construction of the statute. 635 F.3d at 1342. Because Nucor provides no basis for the court to disturb Commerce's selection of methodology, which the court noted is in accordance with law, the court defers to Commerce's selection of methodology. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984); see also Habaş III, 439 F. Supp. 3d at 1349 (rejecting the same proposed methodology for failure "to demonstrate to the court that Commerce's finding was not in accordance with law").

In sum, the court concludes that Commerce implemented a duty drawback methodology and calculation of AD margins as set forth in its Second Remand Results are in accordance with law and supported by substantial evidence.

## CONCLUSION

For the reasons stated, the court affirms Commerce's Second Remand Results and enters judgment in favor of Defendant.

**SO ORDERED.**

*/s/  Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated:  May 20, 2021
         New York, New York